IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEVON GREEN,

                Plaintiff,           OPINION AND ORDER

v.

                                                          19-cv-797-wmc

JEFFREY MANLOVE,

                Defendant.

*Pro se* plaintiff Devon Green is proceeding in this civil action against Dr. Jeffrey Manlove for deliberate indifference to his knee injury in violation of his Eighth Amendment rights. Specifically, Green claims that Manlove failed to provide timely, adequate medical care when Green originally injured his right knee in 2017, and after re-injuring the same knee in 2018, both causing Green to suffer ongoing pain for years. Before the court is defendant Manlove's motion for summary judgment on the ground that Green failed to exhaust his administrative remedies with respect to his claim by filing only one inmate complaint regarding treatment of his knee injury. (Dkt. #26.) Defendant's motion will be granted for the following reasons.[1]

FACTS

In Wisconsin, prisoners must begin the exhaustion process by filing a complaint with an institution complaint examiner ("ICE") within 14 days after the incident giving

---

[1] In addition to opposing Manlove's motion for summary judgment, Green asks the court to lift the discovery stay imposed until October 8, 2021, or until the court decided Manlove's motion. (Dkt. ##38, 39.) The court issued the stay because exhaustion is mandatory before an inmate can bring suit, so it would not be a good use of either party's time or resources to conduct discovery while that motion was pending. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (exhaustion is mandatory). Because the court has now ruled in Manlove's favor on the question of exhaustion, the court will also deny Green's request as moot.

rise to the complaint. Wis. Admin. Code § DOC 310.07(2).[2] Among other requirements, a complaint must contain only one, clearly identified issue, as well as sufficient information for the department to investigate and decide the complaint. *Id.* § 310.07(5)-(6). ICE may reject a complaint for specified reasons, including the failure to provide sufficient information. *Id*. § 310.10(6). If ICE rejects the complaint, then the prisoner may appeal the rejection to the appropriate reviewing authority within 10 days. *Id*. § 310.10(10). If ICE accepts the complaint, then a recommendation is made to the reviewing authority, who in turn renders a decision. *Id*. §§ 310.10(12), 310.11. If that decision is unfavorable, then the prisoner may appeal to the corrections complaint examiner ("CCE") within 14 days, unless good cause is shown for an untimely appeal. *Id*. § 310.12(1), (6). CCE then makes a recommendation to the DOC Secretary, who will take final action on the complaint. *Id*. § 310.13.

The parties agree plaintiff filed an initial grievance, which was received by the institution on September 25, 2018, alleging inadequate knee treatment. (Dkt. #28-2 at 8.) In his grievance, plaintiff states:

> My knee has been severe[] for months. I've suffered for over 3 months I want justice now. Legal action.
> . . .
> I could've been treated. Maybe since I've continued to work and play basketball on my knee it's gotten worse. I was never given a restriction not to work or engage[] in strenuous activity. The HSU staff had no regard[] for my well-being and I'm seeking legal actions because [there is] no reason as to why I've sat around with this injury for so long.

---

[2] Because plaintiff filed his inmate complaint in September 2018, this opinion references the April 2018 version of the complaint procedures then in effect.

(Dkt. #28-2 at 8.) Plaintiff further asserts that he tried to resolve his issue with "HSU staff" and attached an information request sent to the health services unit ("HSU") on September 23, 2018, asking for the results of a knee x-ray taken two months earlier and stating that his knee was "still giving [him] problems," for which he received no treatment. (Dkt. #28-2 at 9.) Green also advised that a nurse had responded to his HSU request, indicating that the x-ray showed a "grossly intact right knee," and that plaintiff was scheduled to be seen. (Dkt. #28-2 at 9.)

ICE rejected Green's grievance on the same date received, September 25, 2018, concluding Green failed to provide sufficient information to support his claim. (Dkt. #28-2 at 6.) In reaching this conclusion, ICE indicated Green had only recently requested x-ray results; ICE further noted that Green stated he was still having problems with his knee via "correspondence, not a HSR," and had not shown "anything whereas HSU denied a request for treatment or failed to respond to an HSR." (Dkt. #28-2 at 2.) Nevertheless, the rejection form indicated that plaintiff could appeal ICE's rejection within 10 days, which plaintiff did on September 30, 2021. (Dkt. #28-2 at 10.) Plaintiff contended in his appeal that despite what the x-rays showed, "it doesn't seem as if [his] knee is fine," since his right knee was "still in severe pain" and "functioning" differently than his left knee; he also indicated that he was going to "seek different help." (Dkt. #28-2 at 10.) The reviewing authority agreed with ICE, concluding on October 10, 2018, that "[t]he rejection made by the ICE was appropriate." (Dkt. #28-2 at 6.) Plaintiff's Inmate Complaint History Report does not show a subsequent complaint regarding knee treatment, and plaintiff does not allege he filed one. (*See* dkt. #28-1.)

OPINION

Prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In other words, a prisoner must follow all the prison's rules for completing the grievance process. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes: (1) compliance with instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all available appeals "in the place, and at the time, the prison administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

This exhaustion requirement is made mandatory so as to give prison administrators a fair opportunity to resolve a grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to comply with § 1997e(a), therefore, the court must dismiss any unexhausted claims without prejudice. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). However, a prisoner's failure to exhaust constitutes an affirmative defense, which defendant must accordingly prove. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). In particular, at summary judgment, defendant must show that there is no genuine dispute of material fact as to plaintiff's failure to exhaust, and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff does not dispute the facts set forth above; rather, he asserts that he filed a "relevant inmate complaint . . . about the defendant's inadequate knee treatment" and points the court to 25 exhibits "for a more detailed inquiry of said incidents." (Dkt. #38

4

at 2.) These exhibits include plaintiff's original grievance, an information request, and appeal, along with 19 health service requests ("HSR") submitted in 2019 through 2021, obviously postdating the rejection of his 2018 inmate complaint. (Dkt. ##35-6 to 35-25.) In these HSRs, plaintiff asks for a lower bunk restriction, knee surgery, an orthopedic consultation, repeatedly asserts that he is in extreme pain, indicates that it is painful to use the stairs, and requests different pain medications for his knee. (*See* dkt. ##35-6 to 35-25.)

While the post-grievance HSRs may establish that a given individual was aware of a medical problem (a precondition to a deliberate indifference claim), they do not satisfy the exhaustion requirement of filing an inmate complaint using the form provided at the prison. Wis. Admin. Code § DOC 310.07(3). Indeed, HSRs are meant to alert *medical staff to a medical need*, not inform prison administrators that an inmate may have a legal grievance against the institution or its employees or agents. *See Ards v. Casiana*, No. 16-cv-341-jdp, 2017 WL 1533461, at *2 (W.D. Wis. April 27, 2017) (heath services request slips "are not grievances, and they do not satisfy the exhaustion requirement"); *Christopher v. Kostohryz*, No. 18-cv-944-bbc, 2019 WL 5394870, at *3 (W.D. Wis. Oct. 22, 2019) ("health service requests do not satisfy the exhaustion requirements of Wis. Admin. Code ch. DOC 310 and are not sufficient to exhaust plaintiff's administrative remedies").

That leaves plaintiff's original 2018 grievance, which ICE rejected under § 310.10(6)(d) for lack of sufficient information, and that ruling was upheld on appeal. Plaintiff does not challenge the validity of this regulation, and as a general matter, this court has stated that "because rejected claims are presumably procedurally flawed, they

cannot satisfy the exhaustion requirement even if appealed." *Collins v. McCaughtry*, No. 04-C-147-C, 2005 WL 503818, at *3 (W.D. Wis. Feb. 28, 2005); *see also Jones v. Frank*, No. 07-cv-141-bbc, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008) ("Under the general rule, plaintiff's failure to comply with this procedural requirement requires the court to dismiss his lawsuit for failure to exhaust all administrative remedies."); *Torry v. Salter*, No. 11-cv-748-wmc, 2013 WL 6238608, at *3 (W.D. Wis. Dec. 3, 2013) ("Regardless of the exact reason for rejecting the complaint, a rejected complaint cannot be exhausted."); *Lindell v. Greff*, No. 19-C-827, 2021 WL 718237, at *3 (E.D. Wis. Feb. 24, 2021) ("sometimes the rejection of an offender complaint demonstrates that the plaintiff did not follow the rules and therefore did not properly exhaust").

While deferring to how prison officials interpret and apply their own grievance procedures, the remaining question is whether the procedural requirement was reasonably interpreted and applied. *E.g., Jones*, 2008 WL 4190322, at *3-4 (finding no exhaustion where ICE's interpretation and application of the requirement that plaintiff plead sufficient facts in his inmate complaint was not "clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts" and that ICE had alerted plaintiff to the problem with the complaint and how to fix it); *Smith v. Lind*, No. 14-cv-796-slc, 2017 WL 782943, at *5 (W.D. Wis. Feb. 28, 2017) ("whether Smith exhausted his administrative remedies regarding his 2008 Eid-ul-Fitr claim turns on whether his complaint was properly rejected as untimely by the complaint examiner"); *Lindell*, 2021 WL 718237, at *3 (plaintiff exhausted even though his inmate complaint was rejected as moot where inmate timely appealed, the court found notice of retaliation claims, and

"defendants do not explain why, in this case, they conclude that the plaintiff failed to exhaust based on the rejection").

The relevant regulation allowing rejection without "sufficient information to support a complaint" is not specific, nor is the related requirement that a complaint "must contain sufficient information for the department to investigate and decide" the complaint. Wis. Admin. Code §§ DOC 310.07(6), 310.10(6)(d). And where "the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint," the complaint "will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (internal quotation marks omitted); *see also Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("All the grievance need do is object intelligibly to some asserted shortcoming.").

Here, ICE recognized that plaintiff was raising the concrete problem of inadequate knee treatment. (Dkt. #28-2 at 2.) In fact, plaintiff's inmate complaint and attachment indicate HSU staff was aware of a potential knee injury and had ordered x-rays; further x-ray results aside, plaintiff claimed that he was still experiencing knee pain after some three months, feared his injury had worsened due to lack of treatment, and had only recently been scheduled to be seen. Defendant Manlove does not dispute any of this. Rather, he points out that the inmate complaint neither specifically references him nor ascribes any treatment deficiencies to him personally. However, the regulations do not require names -- they require only that an inmate clearly identify the issue, which no one argues plaintiff failed to do. *See Schillinger*, 954 F.3d at 996 (no exhaustion where plaintiff's inmate

grievance "raised two entirely different problems" from the claim at issue in his lawsuit).

As previously noted, the primary purpose of a grievance is to alert prison officials to a problem, not to "promote early notice to those who might later be sued." *Jones v. Bock*, 549 U.S. 199, 219 (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")). By filing his inmate grievance, plaintiff at least let prison officials know about allegedly, ongoing inadequate and delayed medical treatment of his right knee, which is why he is now suing defendant, who was at least allegedly "the doctor in charge" of that knee treatment since it was first injured. (Dkt. #14 at 1, 3.)

However, defendant is on firmer footing in arguing that ICE's rejection was proper because plaintiff in fact did not submit any pre-grievance HSRs with his inmate complaint indicating a denial of treatment. (Dkt. #36 at 2.) Indeed, other than indicating HSU was aware of a potential knee problem, had ordered x-rays to diagnose the problem that showed no acute injury, but was being slow, plaintiff provided no documentation to substantiate his grievance, nor indicate that he had had much interaction with anyone from HSU. In addition, plaintiff acknowledged that HSU had just responded to his recent information request and scheduled plaintiff to be seen, albeit at some unspecified point, supporting ICE's decision not to investigate further *at that time*. While it is defendant's burden to show a lack of exhaustion, plaintiff does not develop any argument as to why ICE's rejection was unjustified -- he simply points to the grievance and *later* HSRs to assert that

8

he exhausted his remedies.

Worse still, in an earlier order. the court had warned plaintiff that relying on the submissions with his grievance might not be enough to overcome ICE's finding of insufficiency and gave him a chance to develop his arguments (dkt. #37at 2), but he has not. Defendant does not claim that plaintiff had to submit HSRs with his grievance, but rather that the regulations require "sufficient information for the department to investigate and decide the complaint." Wis. Admin. Code §§ DOC 310.07(6), 310.10(6)(d). On the face of the very general grievance in this case, the court is sympathetic to ICE's view that plaintiff was at that point complaining mainly about a delay in getting x-ray results.

Reading plaintiff's grievance generously, he had asserted that despite worsening knee pain for at least three months, he had still not been given a work or recreation restriction and had generally been disregarded by HSU staff despite past attempts to follow up with HSU about his ongoing knee problems and lack of treatment. Taken together, this was sufficient information for ICE to at least be alerted to the *possibility* that whatever care plaintiff had received for his knee to date was not adequate. However, the court cannot fault ICE for requiring plaintiff to provide additional information regarding the treatment he *did* receive leading up to the decision to take x-rays. In particular, the information in plaintiff's grievance before ICE left open the distinct possibility that the ordering of x-rays was a natural progression of treatment. Indeed, recreation restriction or no, the fact that plaintiff allegedly continued to play basketball despite the alleged pain created more questions about the extent of his knee injury and resulting pain, as well as what complaints he had made to HSU about either. *See Jones*, 2008 WL 4190322, at *3-

4 (plaintiff objected to congregating with inmates who wanted to harm him but did not specify who had threatened to harm him or when, so ICE did not have enough facts to determine whether plaintiff was truly in physical danger); *Williams v. Tobiasz*, No. 13-cv-411-bbc, 2013 WL 39229985, at *1-2 (W.D. Wis. July 29, 2013) (alleging in a grievance that six years in segregation had made plaintiff "mentally ill" was factually insufficient); *Aumann v. Holmes*, No. 13-cv-478-bbc, 2014 WL 3845828, at *1 (W.D. Wis. Aug. 5, 2014) (ICE was entitled to reject a grievance alleging "inappropriate and abusive treatment" on quarantine as factually insufficient).[3]

True, the ICE rejection form indicated that plaintiff could appeal within 10 days of the rejection of his grievance, which plaintiff did, again indicating generally that he continued to be in pain because of insufficient treatment, but plaintiff also had the option of resubmitting his complaint with pre-grievance HSRs or providing greater detail as to evidence of HSU's deliberate indifference to his medical condition before or after x-rays were ordered. Plaintiff also could have submitted another complaint at some point given the allegedly ongoing nature of his pain, although "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *cf. Nieto v. Dittman*, No. 16-cv-163-jpd, 2017 WL 3610571, at *2 (W.D. Wis. Aug. 22, 2017) (finding proper exhaustion where plaintiff complained of an ongoing lack of

---

[3] The district court in each of these cases cited Wis. Admin. Code § DOC 310.11(5)(c), which allowed ICE to reject a complaint where "[t]he inmate does not allege sufficient facts upon which redress may be made" and thus appears to be the former version of what is now § 310.10(6)(d). *See, e.g., Jones*, 2008 WL 4190322, at *3 (citing Wis. Admin. Code § DOC 310.11(5)(c)).

medical care two years after first being seen and once plaintiff realized he would not be able to resolve his grievance informally). As to the narrow question before the court as to whether ICE reasonably interpreted and applied the requirement for sufficient facts, however, the answer on this record is "yes," and plaintiff having chosen to provide no greater specificity or file a new grievance detailing the failure to provide adequate treatment, the court further finds that defendant has met his burden to show plaintiff's failure to exhaust his administrative remedies before filing suit. Accordingly, defendant's motion for summary judgment will be granted and this case closed.

## ORDER

IT IS ORDERED that:

1) Defendant Jeffrey Manlove's motion for summary judgment on exhaustion grounds (dkt. #26) is GRANTED.

2) Plaintiff Devon Green's motions to lift the discovery stay (dkt. ##38, 39) are DENIED AS MOOT.

Entered this 28th day of September, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge